UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**MIAMI DIVISION**

CASE NO. 11-23572-CIV-KMM

CLASS ACTION OF SOUTH FLORIDA
And JOHN RUIZ

        Plaintiffs,

vs.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, P.A.,

        Defendant.
_____/

### AFFIDAVIT OF RALPH NAVARRO

**BEFORE ME**, the undersigned authority, personally appeared, RALPH NAVARRO, who, after being duly sworn, deposes and says as follows:

1. My name is RALPH NAVARRO. I am over the age of 18 and I have personal knowledge of the facts contained herein.

2. I have over 25 years in the boating industry including holding a yacht broker's license and owning and operating yacht brokerages for 25 years.

3. I have been a boater since since I was a child and I have owned multiple vessels including boats similar to the boat at issue.

4. As part of my ownership of a yacht brokerage firm, I was involved in the maintenance, service, repairs and warranty work required for large vessels, including the subject boat for the last 25 years.

5. I have thousands of hours of experience as a captain and in general oprations and maintenance of vessels like the the RUIZ boat and have obtained expertise in thse areas.

6. I am familiar with and have personal knowledge of the model and type of marine raw water A/C pump that was installed in the 62' Open Sport Fish vessel owned by the Plaintiffs. I personally saw this boat being manufactured an I build the boat for our dealer.

7. I was advised by Ricardo Rodriguez of NoWorries, on August 9, 2011, that the 62' Ocean belonging to John Ruiz, had partially sunk where it was docked at Grove Harbour Marina.

8. In my opinion and based on my experience with these boats, there are multiple water entry points at the bottom of the vessel as well as unlimited water entry points over the vessels' sides.

9. There are many intakes in the bottom of the boat that allow seawater to enter so that the engine remains cool and also helps the function of the a/c pump.

10. Mr. Ruiz purchased the 62' Ocean from our company, and at his request we had installed a second a/c pump to circulate the water through the air conditioning system.

11. The two pumps work independently and there was a switch that changed the operation of one pump to the other.

12. If the switch was not on, no water could circulate through that pump and therefore, it would be impossible for any water to leak through that pump.

13. I have reviewed the photographs and information that was generated as a result of the partial sinking of the vessel and claims that the failure of the A/C pump was the result of deterioration and corrosion.

14. Based on this information, there is no way to determine whether there was a process of deterioration or corrosion prior to the sinking unless the unit was taken apart prior to any failure.

15. There was no way to determine whether there was a leak from the inside of the A/C pump from the outside.

16. Both pumps, upon all my observations, were in proper working order and had no signs of corrosion or erosion at any point prior to the loss.

17. I visually inspected the A/C pump in question before and after the accident.

18. The A/C pump on the date of the accident was not corroded or eroded.

19. The A/C pump was submerged under salt water after the accident.

20. I have read the findings of the metallurgist and he does not take into consideration that the a/c pump was exposed to concentrated levels of salt water.

21. I have observed the small hole contained on the a/c water pump and contend it was not caused by deterioration or corrosion and that it would not cause enough water to sink the vessel.

AFFIANT SAYETH NOTHING FURTHER.

_____
RALPH NAVARRO

Sworn to and subscribed before me this ___ day of March 2013.

_____
NOTARY PUBLIC
My Commission Expires:

KAREN J. BACKER
Commission # DD 909497
Expires July 21, 2013
Bonded Thru Troy Fain Insurance 800-385-7019